# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUZANNE R. GOSSETT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | Case No. CIV-18-217-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Suzanne R. Gossett requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-five years old at the time of the administrative hearing (Tr. 55). She completed twelfth grade, and has worked as a receptionist, janitor, teacher aide, carhop, and child care attendant (Tr. 38, 284). The claimant alleges inability to work since January 20, 2013, due to chronic pain syndrome, disorders of sacrum, atypical facial pain, lumbar radiculopathy, occipital neuralgia, other nerve root and plexus disorders, depression, Meniere's disease, and partial loss of hearing (Tr. 283).

## Procedural History

On November 25, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 10, 2012. The applications were denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 6, 2017 (Tr. 23-39). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she could lift/carry/push/pull ten

pounds occasionally and less than ten pounds frequently, stand/walk two hours each in an eight-hour workday, and sit for six hours in an eight-hour workday. However, he imposed the additional limitations of being unable to climb ladders and scaffolds, and only occasionally able to climb stairs, balance, bend, stoop, kneel, crouch and crawl. Finally, he found that she could perform simple, routine and some complex tasks, allowing for semi-skilled work, and that she was able to perform work requiring superficial contact with co-workers, supervisors, and the general public (Tr. 30-31). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, document specialist, addresser, and touch-up screener (Tr. 38-39).

### Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the consultative examination opinion of Dr. Denise LeGrand, (ii) failing to properly evaluate the treating physician opinion of Dr. Michele Bucholtz, and (iii) failing to properly assess her subjective complaints. The undersigned Magistrate Judge agrees with the claimant's first two contentions, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of obesity, degenerative disc disease in the lumbar spine status post fusion in 2010, degenerative disc disease in the cervical spine, chronic pain secondary to back and neck, depressive disorder, and anxiety disorder, as well as the nonsevere impairments of hypertension and

dyslipidemia (Tr. 28).[2]  The relevant medical evidence demonstrates that the claimant underwent a lumbar spine fusion in 2010, and a few months later underwent instrumentation removal and a revision right-sided partial hemilaminectomy with partial medial facetectomy and foraminotomy (Tr. 473-479). The claimant continued to complain of back pain, and was diagnosed with chronic back pain, neck pain, and migraines (Tr. 603).  A February 7, 2013 MRI revealed lower lumbar postsurgical changes, with no evidence of high-grade lumbar stenosis (Tr. 495).

On November 5, 2014, Holly Disher, CNP indicated on a form that the claimant was not able to perform even sedentary work and indicated on an attachment that the claimant's diagnoses included chronic pain syndrome, lumbar radiculopathy, occipital neuralgia, and high blood pressure (Tr. 645-646).  She also stated that the claimant was unable to sit, walk, stand "for long" and that she was unable to lift more than ten pounds on a "regular or extended basis" (Tr. 646).  An MRI of the lumbar spine that same month revealed irregularity about the intervertebral disk space of L4/5, likely postoperative *and* degenerative in nature, as well as moderate degenerative disc changes at L4/5 and mild-to-moderate degenerative disk disease at L2/3 and L3/4 (Tr. 657).

Nurse Practitioner Disher referred the claimant in February 2015 to Dr. Andrew Revelis for pain management, and he began prescribing and managing her pain

---

[2] Although the record reflects the claimant was diagnosed with migraine headaches and received treatment including medication and a history of Botox injections for treatment of them, the ALJ failed to mention or include this impairment in his opinion.  The undersigned Magistrate Judge notes that this was not raised by claimant's counsel but finds that, in light of the recommendation for reversal and remand on other grounds, on remand the ALJ should also properly consider the effect, if any, of the claimant's migraines on her RFC.

medications, as well as steroid injections for the claimant's sciatica and back pain (Tr. 662-713). His notes indicate that the claimant was able to go from seated to standing without difficulty, that she ambulated with a normal gait, and that she had 5/5 strength in her upper and lower extremities (Tr. 821). Nurse Practitioner Disher's notes continue to reflect the claimant's complaints of depression, anxiety, and joint pain and back pain (Tr., *e. g.* 725). The claimant continued with pain management treatment for her sciatica and back pain through 2017 (Tr. 1051). Radiological imaging of the cervical spine and lumbar spine was conducted on January 13, 2017, which revealed minimal/early degenerative disc disease at C4/5 and C5/6, as well as a broad-based posterior disc protrusion at L4/5 now causing moderate central canal and severe left lateral recess/foraminal stenosis (Tr. 1216-1217).

The claimant was hospitalized for psychosis from September 17, 2015 through September 22, 2015 and tested positive for benzos and methadone at the time of admission (Tr. 1011-1034). She was discharged when the psychosis cleared (Tr. 1032).

On October 2, 2015, Dr. Denise LeGrand conducted a mental status examination of the claimant, which included an in-person interview and review of the claimant's records (Tr. 1035). Dr. LeGrand assessed the claimant with an IQ of low average or above (80 or higher), and assessed the claimant with major depressive disorder and delusion disorder in remission (possibly medication induced) (Tr. 1039) She indicated that the claimant had moderate impairments in sustained concentration and persistence, social interaction, performing work activities consistently, work interruptions due to psychiatric symptoms, and interacting with coworkers and the public, as well as a marked limitation in dealing with stress in a work environment (Tr. 1039-1040).

On February 25, 2016, Dr. Michele Bucholtz, DO, completed a "Physical Capacities Evaluation" in which she indicated that the claimant could not sit or stand/walk for even an hour at a time and that she needed to alternate sitting and standing, and that she could use only her left hand for pushing/pulling, but that she could not perform simple grasping, fine manipulation, or repetitive motion tasks with either hand (Tr. 1042).  Additionally, she indicated the claimant could never lift/carry any amount of weight, perform postural limitations, or be around any of the listed hazards (Tr. 1043).  She indicated that the claimant did not suffer from fatigue, but that she did suffer from pain that was disabling at even the sedentary level, and that such pain constituted a significant handicap to sustained attention and concentration that would eliminate skilled work tasks (Tr. 1044-1046).  As to the claimant's mental impairments, she indicated that the claimant was moderately limited in thirteen out of the twenty areas on the Mental RFC Assessment form, including the ability to understand and remember detailed instructions, the ability to complete a normal workday and workweek, and the ability to get along with coworkers or peers (Tr. 1047-1049).  Additionally, she indicated that the claimant has marked limitations in the ability to maintain attention and concentration for extended periods, and work in coordination with or proximity to others without being distracted by them (Tr. 1047-1048).

Later that year on November 1, 2016, Dr. Bucholtz completed additional assessments, indicating that the claimant would miss work more than four days a month due to her pain in her lower back, legs, and arms, pain in her neck, and migraines that occurred multiple times a week, as well as depression and anxiety that "becomes debilitating for many hours at a time" (Tr. 1084-1085, 1091).  She indicated, *inter alia*, that

the claimant could not maintain concentration and attention for extended periods in a routine work setting, handle normal work stress, or be expected to attend employment on a sustained basis (Tr. 1086-1087).  She again indicated that the claimant's pain would constantly interfere with the claimant's attention and concentration, and that she was incapable of even low stress jobs (Tr. 1089).  Furthermore, she indicated that the claimant could sit for ten minutes at a time, stand less than twenty minutes at one time, and sit and stand/walk less than two hours total in an eight-hour workday, and that she needed to be able to sit/stand at will and take unscheduled breaks every thirty minutes (Tr. 1090).

State reviewing physicians indicated that the claimant could perform light work with no manipulative, postural, visual, communicative, or environmental limitations (Tr. 130-131, 151-152).  State reviewing physicians also completed Mental RFC assessments and concluded that the claimant could perform simple and some complex tasks with routine supervision, relate to peers and supervisors on a superficial work basis with limited pubic contact, and adapt to a work environment (Tr. 154).

The claimant asserts that the ALJ erred in evaluating the opinion evidence in the record, and the undersigned Magistrate Judge agrees.  The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight.  The pertinent factors include the following: (i) the length of the treatment

relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at \*5 (July 2, 1996).

Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. The ALJ discussed x-rays and pain treatment

performed prior to the claimant's date last insured, asserting that they did not support the claimant's subjective complaints and did not contradict the RFC (Tr. 32-33). Indeed, at the end of *almost every paragraph* discussing evidence in the record, the ALJ inserted boilerplate language stating that such evidence did not "support the claimant's complaints" and was "not inconsistent with the above" RFC assessment (Tr. 33-36). *See, e. g.*, *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence[.]"). Importantly, the ALJ thus relied on no opinion or medical evidence in the record in reaching his RFC assessment. As to Dr. LeGrand's opinion, he summarized some of her findings but failed to acknowledge the moderate and marked limitations she assessed, and his only "analysis" was the aforementioned boilerplate language (Tr. 35, 1039-1049). As to Dr. Bucholtz, the ALJ gave her opinion little weight, finding it inconsistent with her treatment notes and the medical evidence, and further finding Dr. Bucholtz's opinion as to the claimant's mental impairments to be outside her specialty (Tr. 37). The ALJ gave no weight to Dr. Disher's opinion because she is not an acceptable medical source and because he found her opinion to be "very vague and extremely limiting" (Tr. 37). Finally, the ALJ gave little weight to the opinions of the state reviewing physicians, asserting without citing to any evidence that the "totality of the medical evidence" supported limitations greater than light work, and that the medical evidence supported a finding that the claimant's depression and anxiety were severe (Tr. 37).

Thus, the ALJ erred in failing to conduct the requisite analysis with regard to Dr. Bucholtz's opinion, as well as Dr. LeGrand's and the reviewing physician opinions in the record. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record and proceeded to reject every opinion of her examining, consultative, and reviewing physicians. Instead, he imposed an RFC that would avoid a finding of disabled, while improperly rejecting the evidence as to her mental limitations, specifically evidence related to the claimant's limitations in concentration and ability to handle stress. This is particularly troubling where, as here, the ALJ's failure to account for the claimant's continuing and ongoing seeking out and receiving treatment for persistent and worsening back pain, as well as consistent assessments that the claimant had concentration problems and stress was a major factor in the evidence regarding her ability to function. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**